## DAVIS *v.* DAVIS.

1. If a husband is guilty of cruel treatment toward his wife, or of adultery, and with full knowledge thereof she condones the offense and cohabits with him, and he is not guilty of any further misconduct, she can not thereafter, at her mere will, desert him, and, if suit is brought against her for a divorce on the ground of wilful and continued desertion for three years before the filing of the suit, set up the condoned acts, and thereby prevent the granting of a divorce.

(*a*) If after the condonation the conduct of the husband is such as to revive the condoned acts and give her a right to assert them, she is not debarred from so doing; nor is she prevented from setting up misconduct on his part after the condonation, for the consideration of the jury in determining whether a divorce should be granted.

2. Under the statutes of this State, although a husband may obtain a divorce from his wife on the ground of wilful and continued desertion for more than three years before the filing of the suit, it is not an inflexible rule of law that the wife shall not be allowed alimony. On the other hand it does not follow that the divorced wife would be entitled to alimony as of course, when her conduct has been grossly improper and caused her husband to obtain a total divorce from her.

(*a*) Under the facts of the present case, the judge should have submitted to the jury the question of whether alimony should be allowed to the wife, if a divorce should be granted to the husband.

JULY 14, 1910.

Divorce and alimony. Before Judge Charlton. Chatham superior court. January 13, 1909.

*Oliver & Oliver,* for plaintiff in error.

*Robert L. Colding,* contra.

LUMPKIN, J. Hugh F. Davis brought suit against his wife, Marie A. Davis, for divorce on the ground of wilful and continued desertion for more than three years. She denied the allegation of the plaintiff, and, by way of cross-libel, alleged that the plaintiff had deserted her, had cruelly treated her, and had been guilty of adultery. She prayed that a divorce be granted to her, and that she have a judgment for alimony. The jury found for the plaintiff a total divorce. In the second verdict they declared: "We fix the rights and disabilities of the parties as follows, that neither of the parties be at liberty to marry again." The defendant moved for a new trial, which was denied, and she excepted.

1. Condonation has been defined to be the forgiveness, either express or implied, by a husband of his wife, or by a wife of her husband, for a breach of marital duty, with an implied condition that the offense shall not be repeated. Webster's Dictionary;

*Odom* v. *Odom*, 36 *Ga.* 286.   Voluntary condonation and cohabitation subsequently to the acts complained of, and with notice thereof, prevents the grant of a divorce on account of them.   Civil Code, § 2429.   But if the implied condition be broken, the right to set up such wrongful acts is revived, and the innocent party is not prevented from obtaining a divorce.   What character of misconduct will serve to revive the right to rely upon acts previously condoned, and whether it is necessary that such reviving acts shall be sufficient to furnish a ground for divorce, is not here involved. *Ozmore* v. *Ozmore*, 41 *Ga.* 46; 14 Cyc. 642.   If, however, there is no breach of the condition after condonation and cohabitation, the forgiveness stands as complete and absolute.   The condoning party can not forgive the acts, and cohabit voluntarily with the forgiven one, and at the same time reserve the right to assert them as a means of obtaining a divorce, if there be no further misconduct, or as a screen to prevent a divorce being obtained on account of subsequent breaches of marital duty by such condoning party. To permit this would be to attach a different condition to condonation from that which the law attaches, and to make forgiveness such only in name.   Condonation is not revocable at will.

It was argued that section 2429 of the Civil Code, above cited, closes with the words, "and in all cases, the party sued may plead in defense the conduct of the party suing, and the jury may, on examination of the whole case, refuse a divorce."   This statement follows certain provisions to the effect that "if the adultery, desertion, cruel treatment, or intoxication complained of shall have been occasioned by the collusion of the parties and with the intention of causing a divorce, or if the party complaining was consenting thereto, or if both parties have been guilty of like conduct, or if there has been a voluntary condonation and cohabitation subsequent to the acts complained of, and with notice thereof, then no divorce shall be granted."   The last clause of the section (quoted first above) was not intended to destroy entirely the effects of the condonation, so that a person, after condoning a ground for divorce and cohabiting with the offender, could at some later period, and with no further reason, desert the person so forgiven, persist in such desertion for the statutory period, and yet prevent a divorce by reason of the condoned acts.   If there were a breach of the implied condition on the part of the person whose offense had

been condoned, or if there were other acts or grounds authorizing the refusal of the divorce, this could be pleaded and proved for the consideration of the jury. The charge of the court on this subject was not erroneous.

2. The court charged the jury that if they found a total divorce for the plaintiff, they would put their verdict in a certain form, "and, in that event, you would not allow the defendant alimony." This in effect instructed the jury, as a rule of law, that, if they should find a total divorce in favor of the husband against the wife, they would allow the latter no alimony. At common law (including in that term the canon or ecclesiastical law) the ecclesiastical courts did not grant total divorces except for such cause as rendered the marriage void ab initio. This was rather an adjudication that there had never been a binding marriage than a dissolution of one originally valid. Partial divorces were granted on account of adultery and cruel treatment. Prior to 1858 in England no judicial divorces dissolving the bonds of matrimony, if originally valid, were allowed. Parliament exercised that authority. In its origin alimony was the method by which the spiritual courts enforced the duty of support owed by a husband to his wife during such time as they were legally separated. It was not an incident to declaring the marriage void ab initio, since, if there were no marriage, the duty of maintenance had not been undertaken. The question of awarding alimony upon the dissolution of a valid marriage for a postnuptial cause could not therefore have been decided in England prior to the time when the common law was adopted in this State. In regard to partial divorces it has been declared that where the wife, by her fault, forfeited all claim upon her husband for necessaries or other support, and he obtained a divorce from her on that ground, she could not, after this fact had been adjudged against her, have alimony from him. Thus where a divorce was granted to a husband on account of the adultery of the wife, she was held to be entitled to no alimony. 3 Bl. Com. 94. As late as 1859 in White v. White (24 Jurist, 28), upon the granting of a petition for a judicial separation, presented by a man against his wife on account of her violent and cruel conduct towards him, Cresswell, Judge Ordinary, held that the wife was entitled to no permanent alimony, saying that he found no precedent for granting it in such

case. But in 1864, in Prichard v. Prichard (Law Times Reports, 789), Wilde, Judge Ordinary, overruled the decision in the White case and another similar case, saying "I am aware of the cases to which you allude, but I think if there is no precedent I ought to make one."

It has been decided by a number of courts, that, in the absence of any statute, if a divorce be granted to a husband against the wife, she is not entitled to alimony. This at times worked a great hardship on the wife, especially under the common law, where the marital right of the husband attached to her property; and while it was said to be strict justice, it was also said that it sometimes drove the wife to starvation or a life of shame. The English Parliament adopted a practice, when granting to a husband a total divorce, of requiring him to make some provision for his wife. In England, and in a number of the United States, statutes have been enacted which authorize the courts to grant alimony to wives against whom judgments of divorce are rendered, or to require some other provision to be made by the husbands, when the courts deem it best. In some of these statutes the provision is express, in others the terms are general; but the courts have construed them to have the effect above indicated. Where, under the statute, discretion is vested in the court, it is to be exercised with care. In such jurisdictions it has been said to be the exception, rather than the rule, that the wife shall cause the matrimonial tie to be sundered by reason of her own conduct, and still have alimony; but, on the other hand, that the wife may have collaborated with her husband in acquiring the property held by the latter, that she may have greatly aided in establishing his fortune, that her conduct may not have been justifiable, so as to prevent a divorce, and yet the conduct of the husband may not have been exemplary. She may have no property, and be broken in health. In other words, under such statutes, while the law does not hold out to a wife who deserts the matrimonial domicile the promise of a right to alimony, but rather discourages divorces coupled with pecuniary claims upon the part of the party at fault, yet there may be circumstances which may render it just and proper that some alimony should be allowed to the wife, although the divorce should be granted against her. In such instances the judge or the jury, as the case may be, in passing upon the question of ali-

mony should take into consideration the situation and circumstances of the parties, the property owned by them respectively, the conduct of each, and all the facts which would throw light on the proper exercise of the discretionary power.     2 Bish. Mar. & Div. § 861, et seq., and citations.

The question is, where does Georgia take position on this subject.     At first the legislature granted total divorces.     The first general rule in regard to the matter which the writer has found laid down is contained in the constitution of 1798 (art. 3, sec. 9) where it was declared: "Divorces shall not be granted by the legislature, until the parties shall have had a fair trial before the superior court, and a verdict shall have been obtained, authorizing a divorce upon legal principles.     In such cases, two thirds of each branch of the legislature may pass acts of divorce accordingly." Marbury & Crawford's Digest, 29.     By the act of December 5, 1806 (Cobb's Digest, 224), it was declared that in all cases where the jury "shall determine in favor of a conditional divorce, they shall by their verdict or decree make provision, out of the property of which the husband may be possessed, for the separate maintenance and support of the wife and the issue of such marriage, which verdict or decree the said court shall cause to be carried into effect according to the rules of law, or according to the practice of chancery, as the nature of the case may require."     By amendment to the constitution divorces were made final and conclusive upon the concurrent verdicts of two special juries, authorizing a divorce upon such legal principles "as the General Assembly may by law prescribe."     The last of these amendments doubtless resulted from the decision in *Head* v. *Head*, 2 *Ga.* 191.   · See also Cobb's Digest, 1123.     By the act of February 22, 1850 (Cobb's Digest, 226), the grounds of divorce, both total and partial, were declared.     These are now embodied in Civil Code, § 2426 et seq. The constitution of 1861 contained the following provision: "The superior court shall have exclusive jurisdiction in all cases of divorce, both total and partial; but no total divorce shall be granted except on the concurrent verdicts of two special juries.     In each divorce case, the court shall regulate the rights and disabilities of the parties."     Code of 1863, § 4974.     Thus the entire subject of granting divorces and alimony became fixed by constitutional provision in the superior court, and ceased to be a matter of legisla-

tive grant.   By the act of 1806 (Cobb's Digest, 225) requirement had been made that the party. applying for a divorce should file a schedule of the property owned by the parties respectively, and that, after all just debts had been paid, it should be subject to a division or equal distribution between the children of such parties, unless the jury should think proper to allow either party a part thereof.   When the first code was adopted, instead of providing for a division of the property, it was declared, that, "In all suits for divorce, the party applying shall render a schedule, on oath, of the property owned or possessed by the parties at the time of the application—or at the time of the separation, if the parties have separated—distinguishing the separate estate of the wife, if there be any, which shall be filed with the petition, or pending the suit, under order of the court.   The jury rendering the final verdict in the cause may provide permanent alimony for the wife, either from the corpus of the estate or otherwise, according to the condition of the husband and the source from which the property came into the coverture."   Code of 1863, § 1676.   This language, "In all suits for divorce   .   .   the jury   .   .   may provide permanent alimony for the wife," has been preserved and again adopted in section 2435 of the Civil Code of 1895, although the husband's marital right no longer attaches to the wife's property. Perhaps the possibility that the labor and services of the wife contributed to build up the fortune of the husband may have been in the legislative mind.   Thus it will be seen that the trend of legislation. in Georgia has not been to restrict the powers of the jury or to confine them rigidly to the rule, that, if a divorce shall be granted to the husband against his wife, no provision for her support shall be made.   The authority given to the jury by the act of 1806 to divide the property among the children but to make an allowance to either party, should they think proper, and the later provisions in regard to the powers of the jury, negative the idea of an absolute limitation in regard to alimony if a divorce should be granted to the husband:   In *Campbell* v. *Campbell,* 90 *Ga.* 687 (16 S. E. 960), Mr. Justice Simmons said:   "A wife is entitled to support by her husband until the right is forfeited by her own misconduct; and in some cases alimony has been allowed her even where the divorce was in favor of the husband."   He also said that in this State the right of a wife to a provision by

the husband in her favor is the same, whether the divorce is from bed and board only or a total dissolution of the marriage—at least if a valid marriage has subsisted.    In that case the divorce was granted on the application of the wife.    We have not overlooked the fact that section 2462 of the Civil Code says that "If the jury, on the second or final verdict, find in favor of the wife, they shall also, in providing permanent alimony for her, specify what amount the minor children shall be entitled to for their permanent support,    .    .    and this they may also do if, from any legal cause, the wife may not be entitled to permanent alimony, and the children are not in the same category."    We do not think that the expression, "If the jury, . on the second or final verdict, find in favor of the wife," means that in no event can alimony be awarded unless the wife shall obtain a divorce.    In such a case the law provides, in awarding alimony to her, for specifying the amount to which the minor children should be entitled; and also for finding alimony for the children, should she be debarred from obtaining it for any legal reason.    That section was derived from the act of October 28, 1870 (Acts 1870, p. 413).    Its title was, "An act to extend the provision for alimony to the family of the husband; to provide for the custody of the children, and for other purposes connected therewith."    Under section 2478 of the Civil Code, the husband is bound for necessaries furnished to his wife when living separate from him; but if she voluntarily abandons him without sufficient provocation, notice by the husband shall relieve him of all liability for necessaries furnished to her.    This deals with the authority of the wife, as matter of right, to charge her husband with necessaries, when living separate from him.    It does not deal with divorce cases, or the power of the judge to award temporary alimony, or absolutely prevent a jury from allowing permanent alimony in a proper case.    They may allow it or refuse it, or may allow less than full maintenance, according to circumstances.

The construction of statutes of one State often throws little light on the proper construction of those of another, as a slight difference in language may make a great difference in construction. But an examination of the statutes of other States and their construction by the courts shows that the trend of authority is in harmony with this decision.    In Deenis *v.* Deenis, 79 Ill. 74, a

statute was under consideration which declared, that, "When a divorce shall be decreed, it shall and may be lawful for the court to make such order touching the alimony and maintenance of the wife, the care, custody, and support of the children, or any of them, as from the circumstances of the parties and the nature of the case shall be fair, reasonable, and just." It was held that alimony might be allowed, notwithstanding the divorce was granted for the fault of the wife. The opinion of Mr. Justice Scholfield strongly presents the grounds of equity and justice for such a construction. In Spitler v. Spitler, 108 Ill. 120, the former ruling was adhered to, but it was said that it was not the object of the legislature in adopting the provision of the statute relating to alimony to abrogate the general principles or policy of the law relating to that subject, but rather to clothe the court with power to mitigate occasional hardships that might otherwise occur. In Graves v. Graves, 108 Mass. 314, 317, a somewhat similar statute of Massachusetts was construed, and it was held that alimony might be awarded to the wife upon granting to the husband a divorce for her fault. Gray, J., clearly stated the reason for giving such a construction to the statute.

An application for temporary alimony is made to the presiding judge pending the litigation. He is vested with considerable discretion on the subject. It is sometimes granted where permanent alimony is ultimately refused, on the ground that the wife must be maintained and furnished reasonable opportunity for pressing her suit or defending herself against charges made against her. If she wilfully deserts her husband without cause, this may furnish a ground for refusing temporary alimony, in the discretion of the judge; and in some cases, where the separation was clearly shown to have resulted from the adultery of the wife, or to have been without any shadow of excuse, and there were other circumstances of hardship in requiring the husband to thus support her, it has been held to be an abuse of discretion to allow her alimony. *Vinson* v. *Vinson,* 94 *Ga.* 492 (19 S. E. 898) ; *Kendrick* v. *Kendrick,* 105 *Ga.* 38 (31 S. E. 115) ; *Williams* v. *Williams,* 114 *Ga.* 772 (40 S. E. 782).

In this case the evidence of the wife tended to show bad conduct on the part of the husband; that she had always helped support the family by sewing; that her eyesight was failing, and her

health was becoming so poor that she was scarcely able to do any work, and was not able to support herself without assistance; and there was evidence tending to show that the husband was able-bodied and earned about $18 per week. It was admitted in the pleadings that neither the husband nor the wife had any property. We do not mean that courts or juries should make matrimonial dissensions attractive as a source of profit. The reverse is true. It was declared by McCay, J., as long ago as 1872 (*Hill* v. *Hill,* 47 *Ga.* 332, 336) that "Suits for divorce and alimony ought not to be encouraged."

The jury might perhaps have found against the present plaintiff's application for alimony; but under the evidence the judge erred in declaring, as a fixed rule of law, that, if the jury found a divorce for the husband on the ground of desertion, the wife would be entitled to no alimony.

4. The verdict was somewhat unusual in form; but it is unnecessary to deal with that point, as the case is to be tried again on its merits.

*Judgment reversed. Fish, C. J., and Atkinson, J., dissent. The other Justices concur.*

FISH, C. J. I am constrained to dissent from the proposition announced in the second headnote to the opinion of the majority of the court. I understand the rule to be, that, in the absence of a statute to the contrary, permanent alimony will not be awarded a wife when a decree for divorce is rendered against her. 14 Cyc. 767; 2 Am. & Eng. Enc. Law, 118, (3). The provisions of sections 2435, 2462, and 2478 of the Civil Code, quoted in the opinion, when construed in pari materia, do not, in my opinion, change the rule. If, under the law of this State, a husband is not bound for necessaries furnished his wife if she be living in adultery with another man (Civil Code, § 2478), and if temporary alimony can not be awarded a wife where the separation has been caused solely by adultery on her part (*Williams* v. *Williams,* 114 *Ga.* 772 (40 S. E. 782)), I am unable to understand why the husband should be required to support her by the payment of permanent alimony when he procures a divorce from her because of her adultery, or because of her guilt in any other respect authorizing a divorce. I am authorized by Justice Atkinson to state that he concurs in this dissent.