### BROWN *v.* BROWN.

ATKINSON, J. 1. In a suit by a husband against his wife, for divorce on the ground of cruel treatment, the wife denied the acts of cruelty alleged, and made counter-charges of cruelty on the part of the husband, on the basis of which she prayed for divorce; she prayed also for permanent alimony for herself and minor child, the issue of the marriage. On the first trial a verdict was returned finding a divorce for the plaintiff, and at a subsequent term a second verdict was returned finding a total divorce for the plaintiff and removing the disabilities of the wife. The verdict also provided that the husband should pay to the wife, as permanent alimony, a stated sum per month so long as she shall remain unmarried, and that another stated sum be paid to a named third person for support of the child, until he shall attain the age of eighteen years. *Held,* that so much of such second verdict as finds alimony for the wife and makes provision for the child is not contrary to law or void on the ground that the first verdict, being against the wife, was conclusive against her right to

alimony. Civil Code, §§ 2954, 2981; *Davis* v. *Davis,* 134 *Ga.* 804 (2) (68 S. E. 594, 30 L. R. A. (N. S.) 73, 20 Ann. Cas. 20).

2. The charge complained of in the amendment to the motion for new trial furnishes no cause for reversal. If the language employed by the court was inapt on the issue as to whether the plaintiff was entitled to a divorce, the jury having found in his favor on that issue, the charge was not harmful to the plaintiff.

3. The amount of the allowance was not excessive, and the evidence was sufficient to support the verdict.

*Judgment affirmed. All the Justices concur.*

No. 2381.    JANUARY 10, 1922.

Divorce, etc.    Before W. M. Henry, judge pro hac vice. Floyd superior court.   December 11, 1920.

In 1913 W. J. Brown instituted suit for divorce against Hattie E. Brown. The petition alleged cruel treatment as follows: " Defendant has been cruel and inhumane in her conduct towards petitioner for a long time, abusing him in every way she could think of, striking him, threatening him, threatening his life, destroying and concealing his property and belongings, interfering with him in the exercise of his practice, he being a practicing physician, maligned and slandered him before his patients, and had made life just as miserable for him as possible for several years, which culminated on this date in her driving him from his home after striking and beating him with heavy sticks of wood without cause and without justification. Petitioner is unable to endure said conduct any longer; that the same has caused him great pain, great agony and great humiliation, and entitles him to a total divorce." The defendant filed an answer denying the alleged grounds of cruel treatment, and by way of cross-petition set up cruel treatment upon the part of the husband, as follows: " That during their first period of cohabitation, and a short time before they first separated, petitioner began drinking heavily, and while under the influence of intoxicants her said husband was sullen, cross, and vindictive towards her, calling her foul, vile, and slanderous names; that he often struck, kicked, and beat this defendant, and on the date of their first separation as aforesaid her said husband threw a bowl of water on this defendant and her twelve-months-old baby, and because of said treatment defendant was forced to leave petitioner, being unable to live longer with him. . . On the — day of December, 1911, and at the earnest solicitation of petitioner, who was then sick with la grippe, defendant agreed to resume her

relations with him. . . After having gone back to petitioner . . [he] was reasonably considerate of his said wife for about six months, after which period of time he again became cross, sullen, and abusive towards her, and would go for weeks without speaking a kind word to her, and would become enraged at her when she tried to speak with and comfort him, and would grit his teeth together and strike his hands and feet in anger at her; that about four weeks before their last separation petitioner accused defendant of stealing his money, and said to her, ' You are the one who got it, you black whoring bitch '; that on another occasion he became angry with her without the slightest cause and slapped her face; that about two weeks before her baby was born petitioner became angry with defendant, who was then sick and far advanced with child; and when defendant asked her said husband, who had been out late at night, why he had not come home to her, he replied, ' It is none of your business,' and thereupon struck her in the face and on her side and knocked and shoved her backwards, causing her severe and excruciating pain and physicial suffering, so much so that when her baby was born, some two weeks later, she was unable to leave her bed for six weeks, which she charges and believes was resultant of said treatment of her when in a pregnant condition. . . On the 29th day of May, 1913, petitioner became very angry because of some fault he claimed to have found with the meals prepared for him, calling her vulgar, obscene, and foul names which she is loath to repeat unless required to do so, which was to her great mortification, embarrassment, and anguish of defendant; that defendant's daughter, a young girl eighteen years of age, said to petitioner, ' If you are not pleased with the dinner, you will have to go somewhere else and get some other person to cook it;' whereat petitioner became enraged and slapped defendant's daughter and struck her in the face. . . Because of all of said treatment and much more that defendant can not enumerate, she was compelled to leave her said husband, and did leave him on said last-named date, and has since lived in a bona fide state of separation from her said husband; that she has constantly been in danger of injury to herself, her health, life and limb, and her health was materially affected thereby." The defendant also prayed for temporary and permanent alimony, attorney's fees, and for support of herself and minor child, the issue of such marriage.

On November 11, 1914, the jury returned a first verdict as follows: "We, the jury, find in favor of the plaintiff, and that a total divorce be granted him; that is a divorce a vinculo matrimonii, upon legal principles, between the parties." On August 11, 1915, the jury returned a second verdict as follows: "We the jury find that sufficient evidence has been submitted to our consideration in behalf of the plaintiff to authorize the granting to him of a total divorce, that is to say a divorce a vinculo matrimonii, on legal principles, between the parties; and we further find that the disabilities of the defendant, Mrs. Hattie E. Brown, be removed, and she be, to all intents and purposes, a feme sole, and allowed to remarry. We further find and award as permanent alimony to the defendant, Mrs. Hattie E. Brown, the house and lot to itself, near Cherokee Hosiery Mills in Rome, Ga.; and also we so allow her the sum of $10.00 per month, payable monthly by the plaintiff, W. J. Brown, so long as she remains single. We further find and allow to the child, W. J. Brown Jr., son of the parties, the sum of $100.00 per year, payable quarterly, by the said plaintiff, until he arrives at the age of 18 years, to be paid for his benefit, to J. N. Crozier of said county."

After the second verdict and during the same term of court, the plaintiff made a motion for new trial, upon the grounds: "1st. That all that part of the verdict of said jury, and the decree rendered and based thereon, which awards alimony to the defendant, and which awards alimony to the child, W. J. Brown Jr., is contrary to law, and without evidence to support it. 2nd. That all that part of the verdict of said jury, and the decree rendered based thereon, which awards alimony to the defendant, and which awards alimony to the child, W. J. Brown Jr., is contrary to the evidence, and against the principles of justice and equity." Another ground was added by amendment, which alleged: "That the court erred in charging the jury as follows: 'Now gentlemen, there is before you evidence as to the payment for certain property, — some question as to what money went to pay for certain real estate, and certain personal property, and support of the family. Now I charge you that that has got nothing to do with this case, only for this purpose: You may consider those facts for the purpose of throwing light, if they do so, on the conduct of the parties on those questions, where there is or may be a dispute as to

the conduct or acts of either of the parties. You may consider this evidence I have alluded to, if it aids you in any way. You may also consider it on the question of whether you will or will not find alimony in the case, and what amount you will find, if you find any alimony.' The error being: (a) That the court should have stopped after the words, 'where there is or may be a dispute as to the conduct or acts of either of the parties,' thereby limiting the purpose and effect of such testimony as the court was charging upon; for, as movant insists, as a matter of law such purpose and effect were the only consideration the jury was legally authorized to give such evidence, and the error being in not thus limiting the consideration of such evidence, and in authorizing any further and different consideration by giving the additional charge as follows: 'You may consider this evidence I have alluded to, if it aids you in any way. You may also consider it on the question of whether you will or will not find any alimony,' which so enlarged the authority of the jury that they might consider such evidence for any and all purposes; which movant submits was error and contrary to law. (b) The charge, 'You may consider this evidence I have alluded to, if it aids you in any way,' movant submits, destroyed all limitation of the force and effect such evidence was to have, and gave to the jury the right to use such evidence upon the consideration and determination of any and all questions in the case, and was greatly prejudicial to movant upon the question of alimony, and therefore error. (c) The charge, 'You may also consider it on the question of whether you will or will not find any alimony,' movant submits was error, because it authorized the jury to find alimony against plaintiff upon the issue made by such dispute as to property rights, if they found in favor of defendant's contentions, and was therefore greatly prejudicial to movant and contrary to law,— the law not authorizing alimony to a wife upon any such basis. Movant submits that the charge aforesaid authorized a recovery of alimony if the jury found this movant put money of his wife and her children in property that this movant bought on his own behalf, or improved his property with such funds; which was greatly prejudicial to movant's rights, and was error, being contrary to law, in that the law does not authorize alimony upon such basis, but on the contrary a recovery upon such basis in behalf of defendant should have been in an action for money had and

received, or money and property entrusted to movant by defendant for her use and benefit."

Another ground was added by amendment as follows: " Because it appearing by the proceedings in this case that a jury in this court had heretofore found the issues made by the cross-petition in favor of plaintiff, now movant, and against the defendant, it was conclusive that she was at fault, and therefore not entitled to alimony; and therefore said verdict for alimony was contrary to law and the evidence. Because said verdict was grossly excessive."

On the question of cruel treatment by the respective parties towards each other, as alleged in the pleadings, the evidence was conflicting and sufficient to have authorized a verdict either way. As to his financial worth, the plaintiff testified: " I own those two homes. And own an automobile. . . I own a house at the Cherokee Hosiery Mill. That house and lot is worth five hundred dollars. I own no other property. Might say a hundred dollars worth of note accounts. My practice is not as well as I would like to have it, about enough to pay current expenses. Enough to eat and wear and run an automobile. That house, number 116, cost me about $1250.00 or $1500.00, and is worth that. That other house cost me $900.00 about. The two together cost me about $2150.00. The other house is worth about five hundred dollars. My real estate is worth about $3000.00." He was a practicing physician. There was one child, the issue of the marriage. At the time of the marriage, the defendant was a widow and had six children by her former marriage. They were all minors. Four of them worked. The defendant kept boarders and sewed for other people. The earnings of the defendant, as well as those of her children, by consent were generally turned over to the plaintiff as they were received. Under conflicting evidence the jury was authorized to find that these earnings contributed substantially to payment for the real estate owned by the husband, as well as for the support of the family. The plaintiff's motion for new trial remained pending in court until December 11, 1920, at which time it was overruled. The exception is to the judgment refusing a new trial.

*Harris & Harris* and *M. B. Eubanks,* for plaintiff.

*C. H. Porter* and *C. I. Carey,* for defendant.