The jury having announced in open court their written verdict, as set forth in the plaintiff's bill of exceptions, granting a total divorce to the plaintiff on his libel and to the defendant on her cross-bill, it is unnecessary to determine whether or not a subsequent reduction to writing of the verdict, in which a divorce was granted the plaintiff and the disabilities of the defendant were removed, should be taken to supersede the original finding of the jury in favor of both parties. Unless it should be so taken, the verdict finding a divorce in favor of both parties and alimony in favor of the defendant would come within the rule announced in Anthony v. Anthony, 103 Ga. 250 (29 S.E. 923), where it was held that a verdict in favor of both parties was utterly inconsistent; since the plaintiff in the instant case could not be entitled to a verdict on the ground of wilful and continued desertion if the defendant was entitled to a verdict on the ground that she had justifiably left and remained away from the plaintiff only by reason of his living in a state of adultery with another woman, and his refusal to desist therefrom. In the Anthony case the court said that the anomalous situation brought about by such contradictory findings must be reversed and a new trial ordered so that a finding could be made which would enable the parties to know where *Page 330 
and how they stood. As stated, however, the validity of the verdict in this case as last reduced to writing, which granted a divorce to the plaintiff and removed the disabilities of the defendant, will not be adjudicated for the reason that, even if the revised verdict be taken as valid, the wife would not be entitled to alimony when the husband is granted a divorce on the ground of wilful desertion; nor would the defendant either on her cross bill or under the evidence be entitled to recover alimony for the child who had never been adopted, nor any agreement or steps taken with respect thereto other than a mere discussion as to whether such action would be taken. See, in this connection, Toler v. Goodin, 200 Ga. 527
(37 S.E.2d 609); Wood v. Wood, 166 Ga. 519 (5) (143 S.E. 770). The verdict must be set aside for the additional reason that the finding in favor of the defendant on her cross-bill, in which she set up title to an alleged one-half interest in the one-half interest of her husband in a certain house and its furnishings, was not supported by the evidence, in that no testimony whatever was given for the defendant as to the value of her contribution nor as to the value of the house and furnishings, such as could in any event justify a verdict awarding to the wife title to a one-half interest in the property. Simmons v. Simmons, 194 Ga. 649 (2) (22 S.E.2d 399); Gibbs v. Gibbs, 202 Ga. 105
(42 S.E.2d 374). The plaintiff raises no point as to whether the defendant could determine such an independent question of title in a divorce proceeding. As to that question see Thompson v. Thompson, 199 Ga. 692, 700 (3) (35 S.E.2d 262).
Judgment reversed. All the Justicesconcur.
 No. 15839. JUNE 10, 1947.
 STATEMENT OF FACTS BY JENKINS, CHIEF JUSTICE.
Prince Albert Rogers sued Ruth G. Rogers for a total divorce upon the sole ground of wilful desertion for more than one year. The petition, filed June 22, 1946, alleges that the wife wilfully deserted the plaintiff without just cause on June 20, 1945, and that such desertion has been continuous. The defendant wife filed her answer and cross-action denying that she deserted the plaintiff without cause, and saying that she separated from him because of his keeping company with other women; that the plaintiff was living in a state of adultery with one Ada Dozier. She further alleged in said answer and cross-action that, at all times, and on the date of the filing of her cross-action, she was ready, willing, and desirous of returning to her said husband and resuming the marital relationship, provided he would stop his practice of running out with other women. The prayers of said cross-action were that the relief prayed by the plaintiff be denied, and *Page 331 
that she recover alimony for the support of herself and a child whom she and her husband had taken into their home in 1940 and had "discussed" adopting, but had never done so. She also prayed for attorney's fees, and sought the recovery of an undivided one-half interest in a certain described house and lot and the furnishings therein which she "worked and help pay for." She asked for a total divorce from the plaintiff.
On the trial, the plaintiff testified as follows: "The defendant and I were married about October of 1926, and lived together until the early part of June of 1945, at which time the defendant wilfully deserted and abandoned me. The defendant left me without any just cause. I never gave the defendant any just cause to desert me, she just packed up and moved away from my house in my absence. I have lived in Gordon County, Georgia, all of my life. The defendant has been away from here since she left me up until about the time I filed this suit for divorce. After the defendant had been gone for about a year, I remarried; I thought that after she left without cause I had a right to marry again. The defendant came back to Calhoun after about a year and after I had married again and demanded that I give her money and threatened to make trouble for me if I did not. I went to see a lawyer and he told me that I was not legally married to my last wife, and I then separated from her and have not since that time lived with her as husband and wife, and I then filed this suit for divorce. While I was living with Ruth we did take a child into our home to raise. We never adopted the child, but have discussed the matter of adopting it at different times. The defendant took the child away with her at the time she left me. My mother and I did own the home described in the defendant's counter-suit and I guess that my brothers and sisters and I inherited her half interest on the death of my mother; there was seven of us children. I own and operate a cafe in the City of Calhoun. I do not know how much I make out of it — about $15 per week, I guess. I do doctor animals such as mules, horses, dogs, etc., and charge for such services. I guess I make $4 or $5 a week out of that. I also work at the City Hall. I own an automobile and drive it around town. It is a 19__ Plymouth. I agreed to take the child now in custody of the defendant but we never did adopt him. I do want to support the child and it will take at least $5 per week to support the child. I was arrested *Page 332 
just recently for driving while intoxicated and made bond. I was riding with Ada Dozier, and another girl was found by the highway patrol hiding in the back trunk of the coupe. I deny that I knew that she was in there. I deny that the girl's mother had been after me about running around with her. I do not know anything against the character of the defendant. She never mistreated me and did work and make me a good wife while we lived together."
The defendant, Ruth G. Rogers, testified in her own behalf in substance as follows: "I deny that I deserted or abandoned the plaintiff. The real cause of the separation was the fact the plaintiff kept company with other women. He continuously went out with other women and I often begged him not to do so. He went out with one Ada Dozier before he separated from me, and this was the real reason for my separating from him. I did ask him to refrain from running around with other women, and he refused. I tried everything I knew to get him to quit this practice and finally left him in an effort to get him to do so. I only stayed away a short time and returned and asked plaintiff to let me come back. When I returned, I found him and Ada Dozier living together. He claimed that they were married. They were living together in the same home when he filed this suit against me, and continued to live in the same house after and up until just a short time ago. He refused to let me come back. I am willing to come back right now and have been willing to live with him as his wife all the time since the separation. I ask him to let me come back just a few weeks after the separation, and he knows it. I worked and help pay for that house and the furnishings in it. His mother, Aunt Martha, suggested that the deeds be made in my name when they bought it, but I never thought that anything like this would ever come up. I worked for various white folks around here and all my money went into the home. We all pooled our money and paid for the house and lot and furnishings. The plaintiff and Ada Dozier are or have been living in the home and using the furnishings that my money helped to pay for. I consider that I own one-half undivided interest in the house, lot, and furnishings in the home. I am in bad health and under a doctor's care. I suffer from kidney trouble and am not able to work regularly. When I *Page 333 
do work it is with difficulty. I have no means to earn a living other than my labor and own no property except the interest in the house, lot, and furnishings which I claim. Plaintiff is an able-bodied man and skilled as a person who treats sick animals. He operates a cafe and employs two persons. He owns and operates an automobile. The plaintiff and I were married two years when Ada Dozier was born. I did everything in my power to make plaintiff a good wife and did not give him any cause to run around with other women. We got along together fine and the only complaint was his running around with other women." There was also other testimony given on behalf of the defendant tending to substantiate her charge as to the plaintiff living in a state of adultery as alleged.
The jury, as set forth in the plaintiff's bill of exceptions, announced their written verdict as follows: "Divorce is granted to Prince Albert Rogers. Divorce is granted to Ruth G. Rogers. We agree that Ruth G. Rogers is to receive 50% of Prince Albert Rogers' share in the home and furnishings of the house. Ruth G. Rogers is to receive from Prince Albert Rogers the sum of $15 per month beginning Dec. 1, 1946, said amount to be paid as long as Ruth G. Rogers remains single. The child by the name of Allon is to receive from Prince Albert Rogers the sum of $5 per week, payments to begin Dec. 1, 1946, and to continue until the child reaches the age of 16 years." The verdict of the jury was thereupon further reduced to writing and signed by the foreman, as follows: "We, the jury find that sufficient proofs have been submitted to our consideration to authorize the granting of a total divorce to Prince Albert Rogers, that is to say a divorce a vinculo matrimonii upon legal principles, between the parties to this case. We further find that the disabilities of the defendant be removed. We further find in favor of Ruth G. Rogers 50% of Prince Albert Rogers' share in the premises described in the petition and 50% of the furnishings in said home; also that Prince Albert Rogers do pay to Ruth G. Rogers the sum of $15 per month beginning Dec. 1, 1946, to continue so long as she remains single. Also that Prince Albert Rogers pay to the defendant the sum of $5 per week, for the support and maintenance of Allon Rogers, beginning Dec. 1, 1946, and to continue until said child reaches the age of 16 years. This Nov. 29, 1946." Thereupon, the court *Page 334 
entered the following decree: "A verdict having been rendered at different terms of the court favoring and granting a divorce a vinculo matrimonii upon legal principles between the parties to the above-stated case, it is therefore considered, ordered, adjudged and decreed by the court that the marriage contract heretofore entered into by said parties be and the same is hereby set aside and dissolved and a total divorce granted between said parties with the right to the plaintiff to marry again. It is further ordered and decreed that title to 50% of the interest of Prince Albert Rogers in and to the following described property, be and the same is hereby decreed to be in Ruth G. Rogers: All that tract or parcel of land lying and being in the 14th District and 3rd Section of Gordon County, Georgia, and being lot No. 21 five feet off the south side of lot No. 21, and all of lots Nos. 22, 23, 24, and 25 of the Mrs. T. C. Lowery Subdivision, particularly described by metes, bounds, courses, and distances in a plat thereof on file in the office of the clerk of the Superior Court of Gordon County, Georgia, in Plat Book 1, page 39; also 50 percent of plaintiff's interest in all household furnishings in said home. Further ordered that Prince Albert Rogers pay to Ruth G. Rogers the sum of $15 per month for her support, said payments to begin Dec. 1, 1946, and continue until defendant remarries; also the further sum of $5 per week for the maintenance and support of Allon Rogers, said payments to begin Dec. 1, 1946 and continue until said child arrives at the age of 16 years. All as found by the jury, and it is so ordered." This judgment is now before this court for review upon the bill of exceptions filed by Prince Albert Rogers to the overruling of his motion for a new trial containing only the general grounds.