18835. LIVINGSTON *v.* LIVINGSTON.

ARGUED JANUARY 13, 1955—DECIDED FEBRUARY 16, 1955—
REHEARING DENIED MARCH 16, 1955.

*Stewart & York, W. W. Mundy, Jr.,* for plaintiff in error.

*Charles C. Bunn, E. S. Ault, Neel & Ault,* contra.

MOBLEY, Justice. 1. Ground one of the petition, as amended, to set aside the verdict and judgment contends that the verdict

and judgment is contrary to the evidence and without evidence to support it because the wife condoned the alleged acts of cruelty.

In *Brinson* v. *Brinson*, 201 *Ga.* 540, 542 (2) (40 S. E. 2d 535), this court said: " 'Condonation has been defined to be the forgiveness, either express or implied, by a husband of his wife, or by a wife of her husband, for a breach of marital duty, with an implied condition that the offense shall not be repeated.' *Davis* v. *Davis*, 134 *Ga.* 804 (68 S. E. 594, 30 L. R. A. (N. S.), 73, 20 Ann. Cas. 20). 'Condonation is not so readily presumed against the wife, as the husband. Knowledge of the guilt of the husband, and forgiveness by the wife, are not legally to be presumed, but must be clearly and distinctly proved, in order to bar her action.' *Odom* v. *Odom*, 36 *Ga.* 286 (5), 318; *Lowry* v. *Lowry*, 170 *Ga.* 349 (8, a) 153 S. E. 11, 70 A. L. R. 488); *Duncan* v. *Duncan*, 184 *Ga.* 602 (192 S. E. 215).' " "Whether the wife condoned the alleged acts of cruelty is peculiarly a matter of defense in a trial of the case on its merits." *Lybrand* v. *Lybrand*, 204 *Ga.* 312, 313 (49 S. E. 2d 515); *Johnson* v. *Johnson*, 210 *Ga.* 795, 800 (82 S. E. 2d 831); Code § 30-109.

While the wife testified that, at the time her husband went to Notasulga to live, the date of the final separation, they were not living in a state of separation, and while she refused to go to Alabama with him to live, and she had testified on the hearing on temporary alimony and admitted in evidence in the trial of this case that: "About the first of March, I believe it was 1953, about the first of March, one morning at the breakfast table he said, 'I have decided to go to Notasulga and stay. Are you going with me?' I said, 'No, I don't think so.' He said, 'What are you going to do?' I said, 'I guess I will stay here and work where I can make a living.' He said, 'It is not necessary for you to work.' I said, 'So I have found out,' and I got up from the table and dressed and went to work, and the next morning at just about the same time he says, 'I would like a specific answer to the question I asked you yesterday morning.' I said, 'I thought I was pretty specific but if its got to be yes or no, the answer is no.' He said, 'That's all I wanted to know' "—there was evidence in conflict therewith, to wit: "You ask if there was any change in his attitude after we had reached a reconciliation

through the Draughons, and if he stopped charging that I was putting on and that there was nothing the matter with me. No, in the reconciliation talk that morning he admitted that he had been checked out as distributor in the Cedartown plant, and everybody in town knew it before I did, it happened a month before that, and early in 1952, it must have been around the first of February, I am not sure about that, he said one day that he thought he would go to Notasulga and stay a while. I thought the separation might be a lot of help, and I told him I thought it would be a nice thing to do, so he went down there and stayed and he would come home about every two or three weeks. I never heard from him until he came back unless it was some particular thing, a couple of times he called me over the period of a year that he was down there. At the time he went to Notasulga we were not living in a state of separation, but early in '53 he told me one morning at the breakfast table, about the first of March, 1953, he told me he had about decided to move to Notasulga and asked me if I was going with him. I said 'No, I don't think so.' He had not changed his attitude since the time of the reconciliation, he was just as disagreeable when he came home as he had always been, and I realized he was not going to do anything about it, and I just knew I couldn't go down there. His family owned the home, seven brothers and sisters, and I knew I would be away from my family and my friends. There wasn't anything I could do about it. He wouldn't give me any money, he had not given me any in three years at that time, and I knew I could be put out of the house any time he took a notion to put me out. There wasn't a thing I could do in that town to make a living, and I knew I would be utterly stupid to go. There had been no change in his attitude since the reconciliation, and that was why I knew I couldn't go to Notasulga. He repeated those charges about what was the matter with me, and that I was still trying to poison him, he was always beating and banging on things at the house. I did not feel then and do not feel now that it was safe for me to go with him to Alabama. It has not been safe here, where I could do something for myself, and it certainly wouldn't be safe there." There was other evidence that, after the last reconciliation and up until the final separation, he had continued his cruel treatment of his wife. The

evidence raised an issue for the jury to decide. They accepted the wife's version, and since there was evidence to support their finding, the plaintiff in error's complaint is without merit.

■ Ground two complains that the verdict and judgment are contrary to law because the evidence shows that the wife abandoned her husband by refusing without just cause to accompany him to Notasulga, Alabama, where he moved to live, and that she thereby forfeited her right to alimony. ·

It is well established that, "In this State the husband is the head of the family, and as such has the right to fix the matrimonial residence without the consent of the wife; and the wife is bound to· follow'her husband, when he changes residence, provided the change is made by him in good faith, and not from whim or caprice, or as mere punishment of the wife, or to a place where he does not intend to reside, or to a place where her health or·comfort will be endangered," (*Pace* v. *Pace,* 154 *Ga.* 712 (2), 115 S. E. 65) ; and if the husband in good faith and not violating any of the conditions set out above, decides to change his place of residence, "and the wife, without sufficient grounds for her refusal, refuses to go with her husband and make her domicile with him, preferring to remain at the former domicile, such conduct on her part amounts to an abandonment of her husband," (*Perkerson* v. *Perkerson,* 157 *Ga.* 589, 122 S. E. 53; *Fuller* v. *Fuller,* 108 *Ga.* 256 (4), 33 S. E. 865), and she would not be entitled to alimony.

Where, as here, the evidence is conflicting, as demonstrated by quoted excerpts from the testimony above, the jury is authorized to find that there had not been an abandonment of the husband by the wife and that she is entitled to alimony.

■ The court did not err in refusing to charge, as requested by the husband: "In the event that you find on the issue of divorce in favor of the plaintiff then you should consider whether she is entitled to alimony. If you find from a preponderance of the evidence that the plaintiff refused to go and live with the defendant as his wife to the home selected by him, without just cause as contemplated by the law, such refusal on her part would amount to abandonment of her husband, although he left her, after her refusal to go, and such abandonment of the husband by the wife would bar her from recovery of alimony and attor-

neys' fees," because it was not correct. *Etheridge* v. *Hobbs*, 77 *Ga.* 531 (4) (3 S. E. 251) ; *Macon, Dublin &c. R. Co.* v. *Joyner*, 129 *Ga.* 683 (4) (59 S. E. 902) ; *Spain* v. *Spain*, 203 *Ga.* 411 (2) (47 S. E. 2d 279). The request to charge that, if the jury found in favor of the plaintiff, they should then determine whether she is entitled to alimony, is inconsistent with the request to charge that, if she abandoned her husband, she would not be entitled to alimony. To charge the two together would be error, for, if the jury found for the plaintiff on the ground of cruel treatment, it would not be consistent with a finding that she had abandoned her husband without just cause. If the husband was guilty of cruel treatment justifying a divorce, the wife was justified in leaving him, and would not be guilty of abandoning him without just cause. *Hyndman* v. *Hyndman*, 208 *Ga.* 797 (69 S. E. 2d 859) ; *Rogers* v. *Rogers*, 202 *Ga.* 329 (43 S. E. 2d 152) ; *Anthony* v. *Anthony*, 103 *Ga.* 250 (29 S. E. 923). It is not necessary to determine whether it was error for other reasons to refuse to give the charge. The plaintiff in error assigned error upon the failure of the court to charge the request in its entirety, and it will only be so considered.

■ Viewed in the light of the charge as a whole, the words, "after fixing the amount of alimony," in the following charge: "I charge you that if you find for the plaintiff, granting her a divorce, after fixing the amount of alimony you would then consider the question of whether or not you will remove the disabilities of the defendant, and if so, after completing your verdict, you would add to your verdict, We remove the disabilities of the defendant, and the form of your verdict would be, if you find in favor of the wife, We the jury find in favor of the plaintiff and grant her a divorce, and we fix the amount of alimony at whatever you fix it at, either in property or in money, such amount as you feel she is entitled to receive. On the other hand, if you find in favor of the defendant, and find that he has shown to your satisfaction that he is entitled to a divorce because of desertion on the part of the wife, then the form of your verdict would be, We the jury find for the defendant. Then you would consider whether or not you would remove the disabilities of the plaintiff, and you would add, if you remove the disabilities of the plaintiff, We remove the disabilities of the plaintiff"—did

not imply to the jury that, if they granted the wife a divorce, she would automatically be entitled to alimony, nor did it amount to a direction to the jury to find alimony for the wife if they granted her a divorce. Further, the complaint that the charge precluded the jury from finding for the defendant on the question of alimony except in case they found in favor of the defendant on the divorce, because the charge in submitting the various forms of verdict failed to give the form of verdict should the jury find for the plaintiff on the question of divorce and in favor of the defendant on the question of alimony, is without merit. The charge as a whole made it plain that the jury could grant the plaintiff a divorce and not award her alimony. The court distinctly charged the jury that, in the event they granted the wife a divorce, "then it would be your duty to determine whether or not she would be entitled to alimony." While not necessary to the determination of this issue, on the question of whether the charge, if it did amount to a direction that, if the jury found the wife entitled to a divorce, she would be entitled to alimony, is error, see *Fried* v. *Fried*, 208 *Ga.* 861 (2) (69 S. E. 2d 862); *Wilkes* v. *Wilkes*, 157 *Ga.* 841 (122 S. E. 548).

■ The plaintiff in error complains that the court erred in refusing to admit evidence of an attempt by the wife to tamper with the jury when the case was set for trial at a previous term of court. The evidence offered was from a witness that the plaintiff, when the case was scheduled for trial at a previous term, had brought him a jury list and "asked me to speak a good word for her divorce." He also offered the piece of paper on which his wife had written the names of jurors with the notation, "see these men," and letters that passed between the defendant's attorney and the solicitor-general as to prosecution of her for the alleged offense.

The admission of this evidence would have been error, because what she had done with reference to having someone speak a good word for her divorce to jurors summoned at a previous term of court, would not be relevant or material, as there is no evidence that she had contacted or tried to contact any of the jurors who tried her case, or any summoned for that term. "The evidence must relate to the questions being tried by the jury and bear upon them either directly or indirectly. Irrelevant matter

should be excluded." Code § 38-201. See *Fuller* v. *Fuller,* supra. "It is error to allow, over objection of the defendant, prejudicial and irrelevant matter to go before the jury in a trial, which tends to place his character and conduct before the jury, where the nature of the case does not involve such character, and the same does not render necessary and proper the investigation thereof." *Fitzgerald* v. *State,* 184 *Ga.* 19 (190 S. E. 602).

Accordingly, the trial court did not err in denying the husband's motion to set aside the verdict and judgment granting a divorce and alimony to the wife.

*Judgment affirmed. All the Justices concur.*